Filed 8/26/14  A.H. v. Super. Ct. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| A.H. et al., | |
| Petitioners, | E061175 |
| v. | (Super.Ct.No. RIJ1300202) |
| THE SUPERIOR COURT OF RIVERSIDE COUNTY, | OPINION |
| Respondent; | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDINGS; petition for extraordinary writ.  Tamara L. Wagner, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Petitions denied.

Dawn Shipley for Petitioner A.H.

Anastasia Georggin for Petitioner G.W.

No appearance for Respondent.

Pamela J. Walls, County Counsel, and Julie Koons Jarvi, Deputy County Counsel, for Real Party in Interest.

Petitioners A.H. (Father) and G.W. (Mother) seek extraordinary writ review of the juvenile court's order terminating reunification services and setting a hearing pursuant to Welfare and Institutions Code[1] section 366.26 in regards to their 17-month old daughter A.H. (child). (Cal. Rules of Court, rule 8.452(a).) Both parents argue that there was insufficient evidence to support the juvenile court's finding that the Riverside County Department of Public Social Services (DPSS) provided them with reasonable reunification services. We reject the parents' contention and deny their petitions.

I

FACTUAL AND PROCEDURAL BACKGROUND

On February 25, 2013, DPSS received a referral alleging that Mother had tested positive for marijuana when she delivered the child. Mother informed the hospital staff that she had depression, anxiety, and multiple personality disorders. She also reported that she was bipolar and had schizophrenia, ADHD, dyslexia, and a seizure disorder. Mother was not on any prescription medication, and claimed that marijuana was the only thing that helped her with her disorders. Mother also stated that she was placed on a mental hold (§ 5150) about two years ago and noted being a danger to others more than herself. She further reported that she began having serious mental health issues in 2010

---

[1] All future statutory references are to the Welfare and Institutions Code unless otherwise stated.

and became homeless in Riverside in 2011. She met Father in 2011 at a park when he offered her a marijuana cigarette and they have been together ever since. The parents had briefly lived on the streets together, then temporarily with the paternal grandmother, and later in an apartment with several roommates.

When the social worker responded to the referral, hospital nursing staff indicated that Mother had displayed odd behaviors. Mother would leave the child unattended in her room while she wandered the hospital halls; she would require constant prompting to feed and change the child's diapers; she would raise her voice at the child when the child cried; she would frequently talk and curse to herself; and she would spend a great deal of time arguing with someone over the telephone. Staff further stated that Father had come to the hospital smelling of marijuana; and that during his visits, Mother and Father would argue nonstop. Staff also saw Father yelling at Mother when she had asked him for assistance with walking to the bathroom. Mother described Father as being childlike and suffering from brain damage due to being brutally beaten as a teenager.

Father reported that he had been diagnosed with schizophrenia and bipolar disorder. Father admitted to smoking marijuana on a daily basis and claimed to possess a medical marijuana card. Father stated that he received "SSI" due to having brain damage and that his mother was the payee because he had issues with budgeting money.

On March 1, 2013, the juvenile court found the child came within section 300, subdivision (b).  The child was formally detained and placed in foster care.[2]  The parents were offered visitation and services pending further proceedings.

As of March 25, 2013, the parents had consistently participated in monitored visitation two times per week.  They were observed being appropriate during visitation.  However, the parents had tested positive for marijuana and had encountered difficulties in obtaining mental health and drug treatment services.  MFI Drug Treatment Agency (MFI) had assessed the parents' mental health issues as hindering their ability to benefit from services; and the Riverside County Department of Mental Health (DMH) had reported that the parents could not participate in mental health services/medication evaluation until they had provided a negative drug test.  The social worker thereafter was able to get the parents in for an intake evaluation at the Blaine Street Mental Health Clinic (Blaine Clinic).

The social worker recommended that the allegations in the petition be found true; that the child be declared a dependent of the court; that the parents receive two psychological evaluations to determine if the parents can benefit from services; and that the parents be denied services pursuant to section 361.5, subdivision (b)(2), based on the outcome of the psychological evaluations.  The parents still had not received mental health treatment and were not taking any medications.  Mother reported that psychotropic medications did not work for her and caused her to sleep all day.  Mother had continued

_____

[2]  The child was eventually placed with the paternal grandmother.

4

to display bizarre behaviors and did not show an ability to care for the child. She had to be constantly prompted to care for the child during visitation and required reassurance regarding her ability to meet the child's needs. Father also stated that psychotropic medication did not work for him and chose to smoke marijuana to treat his disorder. His marijuana use was hindering his ability to receive mental health services because psychotropic medication and marijuana cannot be safely used together. Father also had to be constantly prompted to care for the child during visitation.

The parents consented and agreed to psychological evaluations. Both parents had been referred to Dr. Robert Suiter and Dr. Edward Ryan for psychological testing. Mother had completed her evaluation with Dr. Ryan on April 30, 2013, but had to reschedule her appointment with Dr. Suiter to June 19, 2013, because she was unable to find his office. Mother eventually completed testing with Dr. Suiter on June 21. Mother had continued to participate in mental health treatment at the Blaine Clinic, but had tested positive for marijuana on May 6, stating that it was very difficult for her to quit using marijuana.

Father had failed to schedule his appointments, indicating he had been busy, and had not been participating in mental health services. Father also tested positive for marijuana on May 6, and reported that a doctor, whose name he could not recall, told him that he needed to continue to smoke marijuana because if he stopped he would be a "'ticking time bomb.'" Father eventually completed his testing with Drs. Ryan and Suiter on June 21, 2013.

5

DPSS recommended that the parents be denied services pursuant to section 361.5, subdivision (b)(2). Both Drs. Ryan and Suiter reported that neither Mother nor Father were currently capable of caring for the child, would not currently benefit from services, and recommended the parents undergo a psychiatric evaluation. However, in an addendum to his report, Dr. Suiter reported that Father would likely be able to benefit from reunification services, "even though this examiner has certain reservations in that regard."

A contested jurisdictional/dispositional hearing was held on September 10, 2013. Midway through the trial, DPSS recommended that services be provided to the parents, acknowledging that one psychologist could not give a definitive answer with respect to Mother and opined Father may be able to benefit from services. The juvenile court thereafter found the allegations in the petition true as amended, declared the child a dependent of the court, authorized visitation, and ordered reunification services to the parents. The parents' case plan required the parents to attend counseling services, parenting education classes, and drug treatment counseling; submit to a psychiatric/psychological evaluation; take all prescribed medication; and randomly drug test.

By March 11, 2014, the parents were residing together in Moreno Valley with other roommates. Mother was unemployed and depended on SSI benefits for her and Father. Mother was not taking any psychotropic medication, and claimed that she had brain cancer and was receiving treatment. However, Mother had not provided DPSS with documentation to substantiate her claim and asserted that she continued to use marijuana

daily due to her cancer diagnosis. Father also continued to smoke marijuana on a daily basis for back pain and headaches, claiming since he had a medical marijuana card it was legal.

The parents had not participated in their case plan despite being provided with referrals and meeting with the social worker at least four times. The parents had been referred to the Blaine Clinic in October 2013, and to a therapist for individual therapy in February 2014. Although Mother was scheduled to have an intake appointment with the therapist, she cancelled that appointment the following day and reported she was in the hospital. The parents had also been referred to the Blaine Clinic for a medication evaluation. Mother reported that she had monthly appointments with the psychiatrist, but on January 2, 2014, staff at the Blaine Clinic informed the social worker that Mother had not seen a doctor since September 2013. Mother had attempted to schedule an appointment at the Blaine Clinic on February 3, 2014, but became very irritated and refused to take the appointment offered to her. Mother was prescribed "Setraline" and "Veratril," but refused to take the medication, claiming the medication may affect her birth control medication and was advised not to take the medication until she had a pregnancy test. Father's last appointment with a psychiatrist was in October 2013. He was prescribed Risperdal and Benztropine.

The parents were provided with a referral to the Riverside County Substance Abuse Treatment Program on January 23, 2014. However, Mother refused to attend that treatment center because she could not go to Riverside, claiming she had been raped in Riverside; and Father was adamant that he did not need a substance abuse program and

7

refused to participate. In addition, the parents had not submitted to random drug testing, claiming they had a medical marijuana card. Mother provided a copy of the medical marijuana card to DPSS on January 16, 2014. The parents had also been referred to a psychological evaluation with Dr. Garrett at ACT on October 7, 2013; however, ACT informed DPSS that since the parents had received two evaluations, it was not clinically appropriate for them to participate in a third evaluation and that the parents needed to be drug-free for at least 30 days in order to obtain objective results.

Furthermore, the parents had failed to regularly visit the child. Visitation was set to occur twice a week for one hour with DPSS later supervising the visits because Mother claimed the paternal grandmother was hindering her efforts to bond with the child. Mother had missed 18 visits with the child and Father had missed 10 visits. During visits, the parents continued to need prompting; and at one visit, Mother became upset because the paternal grandmother did not "'leave instructions'" for the parents. At another visit, after changing the child's diaper, the child cried uncontrollably and the parents became upset and blamed it on the paternal grandmother. Meanwhile, the child, who had been placed with her paternal grandmother since April 2, 2013, was developing well emotionally, physically, and developmentally, and was very bonded to her paternal grandmother. The paternal grandmother had provided the child with adequate care and ensured the child's needs were met.

The social worker opined that the parents did not appear to have insight into the issues that led to the removal of the child and instead blamed others. In addition, the parents' circumstances had not changed and neither parent had addressed their issues as

evidenced by their continued drug use and lack of mental health treatment. Nonetheless, the social worker recommended that the parents be provided with an additional six months of services.

However, approximately one month later, the social worker recommended that reunification services as to both parents be terminated and a section 366.26 hearing be set. Mother was pregnant and informed the social worker that she would remain clean during her pregnancy. However, both parents refused to participate in drug testing, and Mother reported that she smoked marijuana "'one week ago,'" contradicting her statements to the social worker. Mother also informed the social worker that she had contacted the Riverside START program on March 20, 2014, and was informed she was unable to participate in the inpatient substance abuse program because she was pregnant. However, the social worker later learned from staff at the START program that Mother's information was inaccurate and that pregnant women could attend the program; that the only disqualifying issue would be if a client had a major medical condition; and that a client could be placed in the residential treatment facility within several days once a client completes a mental health diagnosis and assessment.

Mother's therapist reported that Mother is "'all over the place,'" and with her diagnosis and lack of medication and continued drug use, she agreed with the initial psychological evaluations that Mother will not benefit from services. Mother's therapist also reported that Mother stated that she would be giving her child up and therefore did not need to continue in services; that she was no longer pregnant as she had miscarried; and that both she and Father continued to smoke marijuana. Father's therapist reported

9

that he saw this case as a "'high risk'" case; that Father continued to have mood instability; that Father was not compliant with his medication; and that Father appeared to have cognitive impairments. Father's therapist was unsure whether Father could grasp the information learned and implement it in his parenting.

Moreover, the parents continued to miss their scheduled visitations. When the social worker asked Mother why she missed so many visits with the child, Mother responded that she saw no "'purpose'" in visiting her and that the visits were "'pointless'" because the child did not know her and she did not know the child.

A contested review hearing was held on May 15, 2014. At that time, Mother testified; father did not. Mother testified that she had completed a parenting program and submitted to a medication evaluation at the Blaine Clinic, but stopped using her medication when she found out she was pregnant. She also stated that an inpatient substance abuse program could not be located to fit her needs while she was pregnant; and that she was not able to get into an outpatient treatment program because the social worker had not provided her with such information. Mother also asserted that she had called the social worker numerous times, but did not receive a call back; that the visitation time was "very inconvenient"; and that due to her pregnancy, seizures, epilepsy, and heat, she could not walk or wait for a bus to attend the visitations. She further testified that she had attended therapy once a week but did not believe it helped, and that she and her therapist did not see eye to eye.

After considering the evidence, the juvenile court found by a preponderance of the evidence that reasonable services had been provided and that the parents' progress was

10

unsatisfactory towards alleviating or mitigating the causes that necessitated the placement. The court also found by clear and convincing evidence that both parents had failed to regularly participate and make substantive progress in their court-ordered treatment programs and that there was no substantial probability of return of the child to the parents' custody if given an additional six months of services. The juvenile court thereafter terminated the parents' services and set a section 366.26 hearing. The parents petition review of the court's order.

II

DISCUSSION

Both parents argue that the juvenile court erred in finding they were provided with reasonable reunification services. Specifically, Father argues that the social worker did not tailor the case plan to meet his low intelligence, mental disabilities, and unique challenges; that DPSS "cannot give services in a perfunctory fashion"; and that the social worker was required to follow-up with the referrals given. He therefore believes that he was never given a meaningful opportunity to participate in services and reunite with his daughter.

Mother also asserts that her case plan was not narrowly tailored to resolve her psychological and mental issues; that DPSS failed to provide her with assistance to attend her scheduled visitations despite knowledge of her seizures, epilepsy, and pregnancy; and that the social worker was required to communicate, follow-up, and assist her in receiving referrals in a timely manner considering her low intelligence.

11

Reunification services are reasonable if they address the problems that required removal of the child from parental custody and the supervising agency made reasonable efforts to facilitate compliance. (*In re Ronell A.* (1996) 44 Cal.App.4th 1352, 1362.) The parents began receiving services pending further proceedings at the March 1, 2013 detention hearing. Their case plans eventually became effective at the dispositional hearing conducted in September 2013. Neither Father nor Mother challenged the reasonableness of their case plan by appealing from the juvenile court's dispositional order. Nor did they at any time during these dependency proceedings petition the juvenile court to modify their case plan. (§ 388.)[3] Consequently, by failing to challenge the content of the reunification plan by direct appeal, the parents waived any claim that the plan as ordered was unreasonable. (*In re Julie M.* (1999) 69 Cal.App.4th 41, 46-47.)

Our review then is limited to whether the appellate record discloses substantial evidence to support the juvenile court's finding that the agency made reasonable efforts to facilitate reunification recognizing that the standard is not whether the services provided were the best that might be provided in an ideal world, but whether the services were reasonable under the circumstances, since "[i]n almost all cases it will be true that more services could have been provided more frequently and that the services provided were imperfect." (*In re Misako R.* (1991) 2 Cal.App.4th 538, 547; accord, *In re Julie M.* (1999) 69 Cal.App.4th 41, 48.) "Services will be found reasonable if the [d]epartment

---

[3] Section 388 allows the parent of a child adjudged a dependent of the juvenile court to petition the court to change, modify or set aside any order upon grounds of change of circumstance or new evidence.

has 'identified the problems leading to the loss of custody, offered services designed to remedy those problems, maintained reasonable contact with the parents during the course of the service plan, and made reasonable efforts to assist the parents in areas where compliance proved difficult. . . .' [Citation.]" (*In re Alvin R.* (2003) 108 Cal.App.4th 962, 972-973.)

"The adequacy of a reunification plan and of the department's efforts are judged according to the circumstances of each case." (*In re Ronell A.*, *supra*, 44 Cal.App.4th 1352, 1362.) Relevant circumstances include a parent's willingness to participate in services. Reunification services are voluntary and the department cannot force an unwilling parent to participate in the case plan. (*Id*. at p. 1365.) The department is not required to "take the parent by the hand and escort him or her to and through classes or counseling sessions." (*In re Michael S.* (1987) 188 Cal.App.3d 1448, 1463, fn. 5.) Therefore, in assessing the reasonableness of reunification services, the juvenile court evaluates not only the department's efforts to assist the parent in accessing the services, but also the parent's efforts to avail him or herself of those services.

Finally, "with regard to the sufficiency of reunification services, our sole task on review is to determine whether the record discloses substantial evidence which supports the juvenile court's finding that reasonable services were provided or offered." (*Angela S. v. Superior Court* (1995) 36 Cal.App.4th 758, 762.) In doing so, we "must view the evidence in a light most favorable to the respondent. We must indulge in all legitimate and reasonable inferences to uphold the verdict. If there is substantial

evidence supporting the judgment, our duty ends and the judgment must not be disturbed." (*In re Misako R.*, *supra*, 2 Cal.App.4th at p. 545.)

When considered in this context, we conclude that the record contains substantial evidence to support the juvenile court's finding that services provided to both parents were reasonable. In its dispositional report, DPSS identified the problems which led to the loss of custody as the parents' substance abuse, parenting issues, and the parents' mental health issues and disabilities. The reunification plans adopted for both parents contained a myriad of services designed to remedy these problems. The social worker supplied appropriate referrals for service providers on a number of occasions, including follow-up referrals when service providers were unable to accommodate the parents' dual needs of mental health services and chronic use of marijuana. This system appears to have been effective, as the parents were able to find and complete two psychological evaluations, as well as receive medication management and counseling services at the Blaine Clinic based on the referrals given. Further, although clearly a challenge due to the parents' mental capabilities, refusal to maintain their intake appointments, stop abusing marijuana and be treated for substance abuse, and the parents' differing needs, the social worker bent over backwards to provide services and visitation in an attempt to improve family functioning.

Although both parents complain that the services provided failed to take into account their physical and mental disabilities, the record is clear that the social worker did take into account these needs as evidenced by recommending two psychological evaluations to determine whether the parents would benefit from services. While

14

Dr. Ryan believed the parents' could not currently benefit from services and recommended psychiatric and medication evaluations for the parents, and Dr. Suiter wavered as to his findings, the parents were nonetheless provided with services including referrals to a parenting program, substance abuse program, individual therapy and counseling, medication management, and bus passes. However, as the record discloses, the parents failed to participate regularly in their case plan; instead refusing to participate in a substance abuse program, failing to take their medication, and continuing to use marijuana almost on a daily basis. In fact, Father was adamant that he did not need to participate in a substance abuse program and had no intention in stopping his marijuana use. Moreover, as Mother's therapist reported, given Mother's diagnosis, failure to take her medication and continued marijuana use, the therapist agreed with the psychological evaluations that Mother would not benefit from services. The therapist reported that Mother continued to display disorganized thoughts and behaviors and that Mother planned to give up her child and no longer needed to continue with services. Father's therapist reported that he saw the case as a "'high risk'" case and that he was unsure if Father could take the information learned and implement it in parenting.

Mother complains that DPSS failed to provide assistance with visitation and that her health issues made it difficult for her to attend visitation at 1:00 p.m. due to the heat. She implies that the visitation change to the mornings came too late. However, Mother never informed the social worker of these issues prior to the end of April 2014, even though the social worker was in contact with Mother. When the social worker asked Mother on March 17, 2014, why she had missed so many visits, Mother replied that she

15

saw no purpose in visiting the child. And when the social worker attempted to change the visitation schedule the same day, Mother informed her there was a problem with the visitation time and Mother cancelled the next visit. The record shows that the parents never expressed to the social worker that they were having any difficulty accessing their court-ordered services. As has been often remarked, if the parents felt during the reunification period that the services offered to them were inadequate, they had the assistance of counsel to seek guidance from the juvenile court in formulating a better plan. (*In re Christina L.* (1992) 3 Cal.App.4th 404, 416.) And when the social worker discovered problems in assessing the referrals provided due to their dual needs of mental health services and substance abuse, the social worker sought out and provided the parents with viable service providers, such as the Blaine Clinic.

The record shows that DPSS provided the parents with numerous referrals. The parents simply failed to avail themselves of the referrals and the programs. As in *Angela S. v. Superior Court*, *supra*, 36 Cal.App.4th 758, 763, the parents' "real problem was not a lack of services available but a lack of initiative to consistently take advantage of the services that were offered."

In sum, the evidence shows that the parents' respective case plan was tailored to fit their circumstances and that DPSS made reasonable efforts to assist them to comply with their case plan. Hence, the services provided, while not perfect in every regard, were reasonable in the circumstances (*In re Misako R.*, *supra*, 2 Cal.App.4th at p. 547), and the juvenile court's finding that reasonable reunification services were provided is

16

supported by substantial evidence.  (See *Angela S. v. Superior Court*, *supra*, 36

Cal.App.4th at p. 762.)

## III

## DISPOSITION

The petitions are denied on the merits.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ

P. J.

We concur:


RICHLI

J.


MILLER

J.

17