Filed 11/23/20  In re K.B. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| In re K.B., a Person Coming Under the Juvenile Court Law. | C091684 |
| SAN JOAQUIN COUNTY HUMAN SERVICES AGENCY,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>E.S.,<br><br>Defendant and Appellant. | (Super. Ct. No. STK-JV-DP-2019-0000034) |

E.S., the mother of minor K.B., appeals from orders of the juvenile court entered at the 12-month review hearing terminating her reunification services.  (Welf. & Inst. Code, §§ 366.21, subd. (f), 395.)[1]  Mother contends there was insufficient evidence to

---

[1]      Undesignated statutory references are to the Welfare and Institutions Code.

1

support the juvenile court's finding that she was provided reasonable services. We disagree and affirm.

## BACKGROUND

Following a report that mother was physically and emotionally abusive to K.B., the San Joaquin County Human Services Agency (Agency) filed a petition in January 2019, alleging the then 11-year-old minor was at risk of serious physical harm or illness, and serious emotional damage, due to mother's failure to protect her. The Agency also alleged K.B. was left with no provision for support because her father was incarcerated.

On January 23, 2019, the court found K.B. came within the jurisdiction of the court, but did not remove her from mother's custody.

Following a second reported incident of abuse, the Agency asked the court at the jurisdictional hearing on February 6, 2019, to remove K.B. from mother's custody. Over mother's objection, the court ordered K.B. detained. The court also granted mother visitation but ordered it supervised.

On February 27, 2019, the Agency amended the petition to include additional facts. The court sustained the amended petition, and granted the social worker discretion to increase mother's supervised visits and telephone contact.

In March 2019, the Agency recommended mother receive reunification services and prepared a case plan. The case plan included "parenting classes, housing referral, individual counseling to address personal accountability and functioning, narcotic dependence and effects on ability to parent, mental health issues and substance abuse issues, domestic violence and its impact on parenting/children, childhood trauma and effects on mother's ability to safely and appropriately parent, and other issues identified by the client and/or clinician. Additionally, family counseling to address communication, trauma, and other issues identified by the client and[/]or clinician."

On April 3, 2019, the court adopted the Agency's case plan, providing mother with reunification services. The minor's father was bypassed for services.

2

Prior to the six-month review hearing in October 2019, K.B. was living in an "Intensive Services Foster Care placement" where the foster parent, K.B.'s school, and the social worker were working to "stabilize [K.B.'s] mental health." K.B. also was receiving "Wraparound Services" for additional support. Mother completed her parenting education and participated in nine of the 20 required counseling sessions. Mother's counselor indicated mother was "overall making progress towards treatment goals."

The Agency provided mother with a housing voucher but was awaiting additional information from mother to complete that process; the Agency determined that K.B. could not return to mother's custody until mother changed her living situation. Mother continued to visit K.B. six hours a week in public places, and without supervision. The Agency reported that mother's progress in addressing the causes for K.B.'s placement was "substantial." The court ordered the services for mother to continue.

In February 2020, the Agency submitted its 12-month status review report to the court. The Agency reported that mother left California without notice. Mother went to Chicago, Illinois, around January 1, 2020, purportedly for a vacation, but never returned. Mother contacted the Agency and said she intended to remain in Chicago. She refused for several weeks to give the Agency her actual address. Mother advised the Agency she was living with her boyfriend; she was no longer visiting K.B., and she was no longer participating in her case plan.

The Agency also reported that although mother attended 16 of the 20 counseling sessions recommended in her case plan, mother was not actually participating in the therapeutic process and was, in fact, lying to her counselor. Mother apparently told her therapist in November 2019 that reunification services were ending; they were not. Mother attended counseling on December 24, 2019, but did not tell her counselor about her new boyfriend, that she was moving to Chicago, or how she thought relocation would impact her children, her job, or this dependency case.

3

Prior to moving to Chicago, mother missed a number of the twice-weekly in-person visits with K.B. and was dishonest about why, blaming her work schedule. Mother also was bringing "unauthorized" visitors to her visits with K.B., including mother's boyfriend. Mother missed the first scheduled family counseling appointment with K.B. She then made no effort to participate in family therapy offered in K.B.'s group home, and she missed the final mental health team meeting for K.B. Indeed, despite the therapist's recommendation, mother refused to participate in K.B.'s mental health services. Mother also failed to use the housing voucher she was given for housing anywhere in San Joaquin County, choosing instead to go to Chicago.

When mother moved to Chicago, she left K.B. and K.B.'s half siblings without a legal guardian. K.B.'s half siblings were afraid of mother's boyfriend and did not want to leave California. The children reported that mother and her boyfriend smoked marijuana every day, offering it to one of the children. Mother left drug paraphernalia within the children's reach, and at least one of K.B.'s half siblings witnessed mother buying drugs and using drugs while driving. There were other reports of mother regularly using cocaine and methamphetamine. The social worker also noted that before mother left for Chicago, she had lost a substantial amount of weight in a short period of time.

Mother asked the Agency to transfer her case to Chicago, "where CPS and law enforcement are not corrupt like in California." She said that "the police and CPS are too involved with her case . . . ." She told the Agency her family was "conspiring against her to make her look like she is using drugs." Despite her request, mother refused to "provide any specific information about her boyfriend or where she is living, including her address," and stopped participating in her case plan. The Agency reported mother's circumstances were "unknown."

Meanwhile, K.B. was placed in the Children's Home of Stockton and her behavior was deteriorating. She would not attend school and often refused to engage in programs.

4

She assaulted staff and often left the group home without permission to smoke marijuana with other residents.

The Agency recommended mother's services be terminated and a permanent plan be ordered "to allow the minor to achieve some form of permanency."

At the 12-month review hearing on February 26, 2020, the Agency noted mother had reluctantly given the social worker an address not in Chicago, but in Milwaukee. Mother had been in contact with K.B. and the social worker, but she was not at the hearing. Mother's counsel asked for a continuance to allow mother to be present; the court granted counsel's request and continued the hearing to March 11, 2020.

Mother did not appear at the continued hearing on March 11, 2020. K.B. had spoken with mother, and through K.B., mother asked to reschedule the hearing. The court denied her request, stating, "[W]e've got to go forward with what we have. Mom's in Chicago. Unless she's here in California, she's not going to be able to participate at this point. Maybe down the line she'll re[-]engage. She'll be in a position to step up and participate. Right now she's not. So that's hard for you. You're struggling with that, I'm sure. We want to make sure you stay here locally. I don't want to move you to a new facility further away."

Mother's counsel argued the matter should be continued to allow mother to attend the hearing. In the alternative, counsel indicated mother would oppose the recommendation that services be terminated. The court resolved to proceed with the hearing, noting that it already had continued the hearing to allow mother the opportunity to be present.

The court entered the Agency's requested findings and found by "clear and convincing evidence that return of the child to her mother at this time would create a substantial risk of detriment to the safety, protection, physical or emotional well-being of the child." The court also found that "there's not a substantial probability that the child

5

will be returned to the physical custody of her mother within 18 months of the date of the original detention or six months, whichever is sooner."

The court terminated mother's services accordingly but did not set a section 366.26 hearing. The court found that reasonable services were offered to mother, and that mother made minimal progress toward alleviating or mitigating the reasons K.B. was detained.

## DISCUSSION

Mother contends there is insufficient evidence to support the juvenile court's finding and order that she was provided reasonable services in the period before the 12-month review hearing. In support of her contention, mother argues there was insufficient evidence the Agency made reasonable efforts to provide her services when mother moved to Chicago, and the Agency made no effort to address their concern that mother was using drugs. We are not persuaded.

When the sufficiency of the evidence to support a finding or order is challenged on appeal, even where the standard of proof in the trial court is clear and convincing, the reviewing court must determine if there is any substantial evidence—that is, evidence which is reasonable, credible, and of solid value—to support the conclusion of the trier of fact. (*In re Angelia P.* (1981) 28 Cal.3d 908, 924; *In re Jason L.* (1990) 222 Cal.App.3d 1206, 1214.) In making this determination, we recognize that all conflicts are to be resolved in favor of the prevailing party and that issues of fact and credibility are questions for the trier of fact. (*In re Jason L., supra*, at p. 1214; *In re Steve W.* (1990) 217 Cal.App.3d 10, 16.) The reviewing court may not reweigh the evidence when assessing the sufficiency of the evidence. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318-319.)

To provide reasonable services, the Agency must identify the problems which led to loss of custody, design services to remedy the problems, maintain reasonable contact with the parent, and make reasonable efforts to assist the parent when compliance has

6

proved difficult.  (*In re Alvin R.* (2003) 108 Cal.App.4th 962, 972-973.)  The question is not whether more or better services could have been provided, but "whether the services were reasonable under the circumstances."  (*In re Misako R.* (1991) 2 Cal.App.4th 538, 547.)  "Reunification services are voluntary, and cannot be forced on an unwilling or indifferent parent.  [Citation.]"  (*In re Jonathan R.* (1989) 211 Cal.App.3d 1214, 1220.)

Mother's progress in the first six months of services appeared adequate, but after October 2019 it became apparent that mother was not committed to participating in services or reunifying with K.B.  After January 2020 it was clear mother had been withholding critical information from her counselor, including having a new boyfriend and forming an intent to move out of state.  She also lied to her counselor about the discontinuation of services, all of which demonstrated a failure to participate in the therapeutic process.

In the first six months of services, mother completed the parenting program but then refused to participate in the mental health services for K.B.  She visited with K.B. as part of her case plan, but after October 2019, began bringing unauthorized people to those visits, and then missing visits altogether.  At least one element of mother's case plan was learning about drug dependence and the impact of drug use on parenting.  By February 2020, however, evidence that mother was using drugs, often in front of the children, was mounting.

Then, after demonstrating a decreasing interest in participating in reunification services, mother walked away from K.B., K.B.'s half siblings, and from reunification services.  Mother moved to Chicago (or Milwaukee) without notice and without making arrangements to continue participating in her case plan after she relocated.  Mother insisted she would no longer participate in services in California because she deemed the system too corrupt and overly involved in her case.  But, mother also refused to give the Agency any specific information relative to her living situation, resisting for weeks before acquiescing and providing the Agency her address.

Mother was then given two opportunities to attend the 12-month review hearing: to address the drug use allegations and to demonstrate her commitment to participating in services so that she could reunify with K.B. She never appeared.

On this record, we conclude the Agency gave mother reasonable services and provided her ample opportunity to participate in those services. Mother, however, refused to participate, opting instead to relocate without notice; her refusal to participate does not render the services unreasonable. (See, e.g., *In re Mario C.* (1990) 226 Cal.App.3d 599, 604.) No error appears.

## DISPOSITION

The orders of the juvenile court are affirmed.

                                        KRAUSE            , J.


We concur:


        BLEASE            , Acting P. J.


        HOCH            , J.

8