Filed 1/26/22  In re Aiden A. CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re AIDEN A., a Person Coming Under the Juvenile Court Law. | B313238 |
| TYLER A., <br><br> Petitioner, <br><br> v. <br><br> THE SUPERIOR COURT OF LOS ANGELES COUNTY, <br><br> Respondent; <br><br> LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES et al., <br><br> Real Parties in Interest. | Los Angeles County Super. Ct. No. 19CCJP06085A |

ORIGINAL PROCEEDINGS in mandate. Marguerite D. Downing, Judge. Petition denied.

Law Offices of Vincent W. Davis & Associates and Vincent W. Davis for Petitioner.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, Stephen Watson, Deputy County Counsel, for Real Party in Interest Department of Children and Family Services.

Michael T. Ono, under appointment by the Court of Appeal, for Real Party in Interest Aiden A.

---

## INTRODUCTION

Tyler A. (father) petitions for extraordinary relief from the juvenile court's order terminating reunification services and setting a selection and implementation hearing under Welfare and Institutions Code section 366.26.[1] Father contends the court erred by finding that the Department of Children and Family Services (Department) provided him with reasonable reunification services. Specifically, father argues he should have been provided with additional services to address sexual and physical abuse because the abuse was the reason the court found it would be detrimental to return father's son to his care. He does not challenge the detriment finding itself, however. We conclude substantial evidence supports the court's order, and father has failed to establish what additional reunification services should have been provided to him. The petition is denied.

---

[1] All undesignated statutory references are to the Welfare and Institutions Code.

2

# BACKGROUND

Aiden A. (born 2016) is the son of father and Mariah N. (mother).[2]

## 1.      Assumption of Jurisdiction

The family came to the Department's attention in May 2019 due to mother's substance abuse and mental health problems. At the time, the family was living with maternal relatives. In August 2019, however, the family was asked to leave the home because of mother's heroin use; they moved into a motel.

On September 13, 2019, during a visit to the family's motel room, a social worker noticed a strong marijuana odor and saw marijuana and a marijuana pipe on a nightstand within Aiden's reach. Father tried to hide the pipe and claimed it was the first time mother had smoked marijuana in the room. Father tested negative for drugs later that day.

On September 18, 2019, the Department filed a juvenile dependency petition under section 300, subdivision (b)(1), on behalf of Aiden, who was then almost three years old. The petition alleged that mother had mental health problems for which she failed to take prescribed medication (count b-1) and a history of substance abuse (count b-2) and that father failed to protect Aiden from these issues (counts b-1 & b-2). It also alleged that mother and father created a detrimental, endangering home environment by leaving marijuana, drug paraphernalia, and alcohol within Aiden's reach (count b-3).

---

[2] Because mother is not a party to this proceeding, we focus on the facts relevant to father.

On November 22, 2019, at a combined jurisdiction and disposition hearing, the court sustained the petition, declared Aiden a dependent of the court, and removed him from parental custody. The court granted the parents monitored visits and ordered reunification services. Father's case plan included: six random drug tests with a full drug program in the event of any missed or positive test, parenting classes, and individual counseling to address case issues. The court also ordered services to address Aiden's speech delays.[3]

## 2.    Six-Month and 12-Month Reviews

On February 24, 2020, the Department notified the court that father had moved to his mother's house in Arizona.

That spring, father completed online parenting classes, was participating in individual therapy, and had tested negative for drugs twice but failed to appear for seven tests. Before the Covid-19 outbreak, father had been driving intermittently from Arizona to visit Aiden and was appropriate during visits. After the outbreak, father's visits were scheduled for twice per week via video. Father was consistent with the virtual visits.

On May 21, 2020, Aiden underwent a forensic examination because he was acting out sexually; the examination was inconclusive.

On September 15, 2020, the court conducted a six-month review hearing (§ 366.21, subd. (e)). The court found father was in partial compliance with his case plan and ordered the Department to continue providing him with reunification

---

[3] Aiden was later found to have a language disorder.

services, but found returning Aiden to father's custody would create a substantial risk of detriment to the child's well-being.

On December 21, 2020, the court held the 12-month review hearing (§ 366.21, subd. (f)(1)). The court again found returning Aiden to father's custody would create a substantial risk of detriment to the child's well-being. The court found that father had made substantial progress in his case plan, however, and authorized him to host Aiden for a two-week visit in Arizona.

### 3. 18-Month Review Period

Aiden visited father in Arizona from December 30, 2020 through January 17, 2021. Aiden was comfortable with father and did not want to leave his side at the end of the trip. On the way back to California, Aiden vomited and cried for father.

When he returned to his foster placement, however, Aiden appeared sad and announced to the caregiver and social worker, "My dad touched my pee-pee again." Aiden then explained that father had touched him inappropriately while he was on father's bed playing video games. Aiden went on to report the allegation to several other adults, including his teacher, mother, and therapist; he repeated the allegations every time he saw the social worker. Aiden also reported that father hit him on the shoulder with an open hand. Father denied the allegations and requested a polygraph test. He said he would never touch his son or any child inappropriately. The results of the subsequent investigation were inconclusive, and the Department scheduled a forensic examination.

On April 2, 2021, Aiden underwent a forensic examination for possible sexual abuse. According to a Last Minute Information filed by the Department on May 10, 2021, the assessment concluded that Aiden had "consistently and clearly disclosed

5

inappropriate touching of his genitalia and being hit, causing pain to his shoulder and back area by his biological father … during his extended holiday visit. The report stated that the disclosures made by Aiden are highly suspicious for sexual and physical abuse and that there are further concerns that father is grooming Aiden by continuously buying multiple gifts and toys." The Information also noted that during a virtual visit between father and Aiden on May 4, 2021, father said he missed Aiden, and Aiden replied, "You don't miss me because you touched my pee-pee and hit me."

At the June 17, 2021, 18-month review hearing (§ 366.22, subd. (a)(1)), Aiden's attorney argued that the court should terminate reunification services, noting that although previous reports had been unclear because of Aiden's limited verbal ability, since the holiday visit, Aiden had consistently and clearly disclosed inappropriate touching.

Father asked the court to return Aiden to his care or, alternatively, to continue family reunification services. Counsel noted that father had "been in constant communication with the case worker" and had finished his case plan. As to the allegations of sexual abuse, counsel argued that Aiden appeared to have been coached and had made no such claims to the Arizona child welfare agency.

The Department asked the court to terminate reunification services. The Department argued that "it is extremely concerning that this child has made consistent statements of sexual abuse to basically anyone who comes into contact, and the Department does not, at this time, have any belief or thought that he appears to be coached. There does not seem to be any ulterior motive by the caretaker, who was supportive, earlier, of father's extended

6

visit that he had. So I—I just don't see that there is anything other than maybe what is represented by Aiden."

The court held that returning Aiden to father's physical custody would create a substantial risk of detriment to his safety, protection, and physical and emotional well-being. The court found that father was in compliance with his case plan, but explained, "given the last forensic exam, when it appears there was sexual abuse or—and/or physical abuse, it would be irresponsible of me to send this child out of the State of California where the Department does not have eyes on it to ensure Aiden's protection." The court held that the Department had made reasonable efforts to aid reunification and noted that father had received 20 months of reunification services, then terminated services and set a permanency-planning hearing.

On June 23, 2021, father filed a notice of intent to file a writ petition challenging the June 17, 2021 order. On October 14, 2021, we stayed the section 366.26 hearing scheduled for October 18, 2021. Father filed the writ petition on November 22, 2021, and later that week, we issued an order to show cause stating our intent to decide the matter on the merits.

## DISCUSSION

Father contends the reunification plan was unreasonable because although it addressed the original causes of dependency jurisdiction—his failure to protect Aiden from mother's drug use and mental health problems—the Department subsequently recommended terminating services for reasons that had not caused Aiden to become a dependent of the court. Although father did not raise this issue below, we exercise our discretion to reach the merits of his claim.

1.      **Legal Principles and Standard of Review**

"The purpose of the California dependency system is to protect children from harm and to preserve families when safe for the child. [Citations.] The focus during the reunification period is to preserve the family whenever possible. [Citation.] Until services are terminated, family reunification is the goal and the parent is entitled to every presumption in favor of returning the child to parental custody. [Citations.] After reunification services are terminated, the focus is to provide the child with a safe, permanent home. [Citation.]

"At a status review hearing, the court must return the child to the physical custody of his or her parent unless the Agency proves, by a preponderance of the evidence, that return to the parent would create a substantial risk of detriment to the safety, protection, or physical or emotional well-being of the child. [Citations.] The court may not set a section 366.26 hearing at a six-month or 12-month review hearing unless it finds by clear and convincing evidence reasonable services have been offered or provided to the family. [Citations.] At the 18-month review hearing, the court may continue the hearing under section 352 if it finds that reasonable family reunification services have not been offered or provided to the parents. [Citation.]" (*Tracy J. v. Superior Court* (2012) 202 Cal.App.4th 1415, 1423–1424.)

The Department must make a good faith effort to develop and implement the family reunification plan. (*In re Jasmon O.* (1994) 8 Cal.4th 398, 424.) Reunification services should be tailored to the particular needs of the family. (*David B. v. Superior Court* (2004) 123 Cal.App.4th 768, 788.) The Department's efforts must, therefore, be judged according to the circumstances of each particular case. (*In re Taylor J.* (2014) 223

Cal.App.4th 1446, 1451.) "However, to make the requisite findings, the record should show that the supervising agency identified the problems leading to the loss of custody, offered services designed to remedy those problems, maintained *reasonable* contact with the parents during the course of the service plan, and made *reasonable* efforts to assist the parents in areas where compliance proved difficult (such as helping to provide transportation and offering more intensive rehabilitation services where others have failed)." (*In re Riva M.* (1991) 235 Cal.App.3d 403, 414.)

We review a court's reasonable-services finding for substantial evidence from which the court could conclude there was clear and convincing evidence that the Department provided reasonable services. (*In re Alvin R.* (2003) 108 Cal.App.4th 962, 971.) In determining whether substantial evidence exists, we review the evidence in the light most favorable to the prevailing party and indulge all legitimate and reasonable inferences to uphold the ruling. (*In re Misako R.* (1991) 2 Cal.App.4th 538, 545.) The standard is not whether the services provided were the best that might have been provided, but rather whether they were reasonable under the circumstances. (*Id.* at p. 547.)

2. **Substantial evidence supports the court's reasonable-services finding.**

Father argues that the court should have granted him additional reunification services because the Department "did not correctly identify the new problem leading to loss of custody," did not provide reasonable services "as it relates to the alleged physical and/or sexual abuse," and "did not make any simple effort to remedy the problem of potential physical and/or sexual abuse."

9

First, the allegations of sexual abuse were not a "new problem leading to the loss of custody." Aiden was removed from father's care based on his failure to protect his son from mother's drug and mental health problems. The abuse allegations made it unsafe *to return* Aiden to father's custody. Likewise, the Department did not seek to terminate services because of the abuse allegations. It did so because, after 20 months of reunification services, it was unsafe to return Aiden to father's care. (See § 366.22, subd. (a)(1) [at the 18-month review hearing, the juvenile court must return the child to the parent's custody unless it would be detrimental to do so]; *id.*, subd. (a)(3) [if the child is not returned to the parent's custody, the court must terminate reunification services and set a permanency-planning hearing].)

To be sure, the court's reason for not returning Aiden home (risk of sexual and physical abuse) differed from the court's reasons for assuming jurisdiction (mother's drug use and father's failure to protect), and there is some question about the propriety of that approach. (See *In re Joseph B.* (1996) 42 Cal.App.4th 890, 899–901 [if return of child to parental custody would be detrimental, out-of-home placement must continue notwithstanding parent's completion of reunification plan and correction of problems that necessitated jurisdiction]; but see *In re Dustin R.* (1997) 54 Cal.App.4th 1131, 1140 [construing *Joseph B.* narrowly as applying "only when the risk of detriment at the 18-month hearing was caused by the parent's actions leading to the out-of-home placement"].) But father does not challenge the court's detriment finding.

Second, father has not established what specific services *would be* reasonable under these circumstances. Instead, he

10

suggests that the Department "could have provided individual therapy and/or family therapy and/or other referrals to address the concern the [D]epartment may have." He fails to acknowledge, however, that he received individual therapy; apparently, it did not help. Moreover, father's only response to the allegation of sexual abuse was to deny it. It is unclear how additional therapy would be able to address an issue father doesn't acknowledge exists. Nor does father suggest what "other referrals" would be pertinent to a parent who denies sexually abusing his child. (See *In re Gabriel K.* (2012) 203 Cal.App.4th 188, 197 ["One cannot correct a problem one fails to acknowledge."].)

Certainly, father had the right to contest the allegations against him—but he chose not to. As noted above, father does not challenge the court's detriment finding. And although the finding was based primarily on a few sentences in a Last Minute Information, father has never raised any due process concerns concerning this procedure. At the hearing below, father did not seek to testify, ask to examine the social worker who prepared the Last Minute Information, object to the admission of that document, or seek admission of the full forensic examination report.[4] Nor did he attempt to examine any of the other individuals to whom Aidan had reported the abuse. (See *In re J.P.* (2017) 15 Cal.App.5th 789, 800 [due process requires that parents be given the right to cross-examine adversarial

---

[4] The report of the forensic examination is not part of the record in this case, and the record does not reveal whether father's counsel was provided with a copy of the full report before the June 17, 2021 hearing.

11

witnesses, such as the caseworker and persons whose hearsay statements are contained in the reports].)

## DISPOSITION

The petition for extraordinary relief is denied. This opinion is final immediately upon filing. (Cal. Rules of Court, rule 8.490(b)(2)(A).)


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


LAVIN, J.

WE CONCUR:


EDMON, P. J.


EGERTON, J.