Filed 9/26/22 In re M.N. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re M.N. et al., Persons Coming Under the Juvenile Court Law. | |
| STANISLAUS COUNTY COMMUNITY SERVICES AGENCY,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>M.A.,<br><br>Defendant and Appellant. | F084160<br><br>(Super. Ct. No. JVDP-21-000159, JVDP-21-000160, JVDP-21-000161)<br><br>**OPINION** |

## THE COURT[*]

APPEAL from an order of the Superior Court of Stanislaus County. Annette Rees, Judge.

Teri Yin, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Boze, County Counsel, and Maria Elena Ratliff, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Levy, Acting P. J., Franson, J. and Peña, J.

Ma.N. (mother) and M.A. (father) are the parents of M.N. (born April 2010), D.N. (born June 2015), and I.N. (born October 2016) (collectively, the children). Father appeals the juvenile court's reasonable services finding made at the Welfare and Institutions Code section 366.21, subdivision (e)[1] six-month review hearing. He contends the court's finding that the Stanislaus County Community Services Agency (agency) offered him reasonable services is not supported by substantial evidence. Specifically, he argues the agency's failure to address his language barrier prevented him from participating in critical aspects of his case plan until near the end of the six-month review period. We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

**A. Referral and Detention**

On July 28, 2021, the agency received a referral alleging M.N. called law enforcement to report that mother and father were fighting. Law enforcement called father and he stated everything was okay, but that mother was intoxicated and breaking windows. Law enforcement responded to the family's home, but no one was there. The front window of the house was shattered and there was blood on the side of the house leading to the front door. Law enforcement forced entry into the house where it found a trail of blood inside. A neighbor reported father ran out with the children after the altercation. The parents denied the altercation occurred in front of the children. M.N., mother, and father gave conflicting narratives of the incident. The agency's investigation revealed mother and father engaged in severe ongoing domestic violence in front of the children, mother appeared to suffer from mental health problems, father had anger management issues, and both parents were suffering from substance abuse. The agency subsequently filed a section 300 petition on behalf of the children, and they were detained and placed in foster care.

---

[1]    All further statutory references are to the Welfare and Institutions Code.

On August 5, 2021, father appeared at the detention hearing with a Spanish interpreter. The juvenile court found the children were persons described by section 300 and ordered them detained. The parents were ordered supervised visitation and a weekly phone call. Father was provided with service referrals and contact information for the placement specialist and visitation center in Spanish. Father's service referrals included a parenting program, individual counseling, a domestic violence offender program, and an anger management program at Sierra Vista Child & Family Services (Sierra Vista). Additionally, he was referred to a substance abuse assessment at Behavioral Health and Recovery Services. The court set a jurisdiction and disposition hearing for the following month.

**B. Jurisdiction and Disposition**

The jurisdiction and disposition report outlined father's efforts to participate in services. On August 6, 2021, the agency sent father's referral to Sierra Vista, and resent it on September 1, 2021, but he had not completed an intake appointment. Regarding progress in substance abuse services, father completed a substance abuse assessment on August 31, 2021. He tested positive for alcohol and was referred to a Spanish language outpatient substance treatment program. The agency noted it made multiple contacts with father in August regarding his case plan.

The agency reported that father continued to minimize his domestic violence problems, but he acknowledged he needed domestic violence services. His domestic violence problems were influenced by his alcohol abuse. He had a substantial substance abuse related criminal history that included several offenses for driving under the influence. The agency recommended the juvenile court find that reasonable efforts had been made to prevent the children's need for removal and that father had made good progress toward alleviating or mitigating the causes necessitating placement. It further recommended the court order the children removed from the parents' physical custody and grant father reunification services.

The agency prepared a case plan indicating the agency was responsible for making appropriate community referrals, conducting a child and family team meeting at least once every six months, and making one monthly compliance contact with father to ensure case plan engagement, progress, and compliance. Father's responsibilities included attending, actively participating, and successfully completing anger management classes, individual counseling, a domestic violence perpetrator program, and a parenting program with a minimum of three parent/child labs at Sierra Vista or another program approved by the social worker. The parent/child labs were to be initiated after father completed parenting group sessions and upon the recommendation of the parenting education clinician. Additionally, he was required to participate in a substance abuse assessment and random drug testing.

On September 22, 2021, father appeared at the jurisdiction and disposition hearing. Father's counsel made an offer of proof that if father were called to testify, he would state that "he [was] actively engaged in services and look[ed] forward to reunifying with [the] children." Father's counsel submitted on the agency's report, noting that father agreed with the recommendations. Additionally, father's counsel requested the court set a 90-day review hearing due to father's language barrier. He said, "I want to make sure my client is actively engaged in Spanish-speaking services. I am going to request a 90-day progress review to review visitation and progress." The court found the petition true and that continued placement was necessary. It found the agency had complied with the case plan by making reasonable efforts to return the children home and that father's progress had been good. It granted father reunification services and set a 90-day progress review hearing.

## C. 90-Day Progress Review

On December 14, 2021, the juvenile court held a progress review hearing. In preparation for the hearing, the agency filed documents detailing father's progress in services. A letter from Sierra Vista indicated father was referred to services on August 4,

2021, but did not apply for services until November 9, 2021. Sierra Vista conducted his intake on November 23, 2021.[2] The agency reported father had not been assigned a clinician for the anger management, individual counseling, domestic violence, and parent education programs at Sierra Vista. Regarding substance abuse services, father had been admitted to an outpatient treatment program and was participating in Spanish-speaking groups. In October and November 2021, father tested positive for alcohol.

The court found father had made "fairly good" progress in services and ordered the previous orders to remain in full force and effect.

## D. Six-Month Review

The six-month status review report indicated mother and father were still living together and were in a relationship. Both parents wished to reunify with the children and stated they would continue to engage in services. The agency reported it had monthly contact with father to ensure case plan compliance. During those contacts, the social worker and father reviewed the case plan and discussed client objectives and responsibilities.

Regarding father's efforts, the report indicated that on February 17, 2022, he completed the second half of intake at Sierra Vista. A week prior to that, Sierra Vista had contacted the agency and reported that father had not been assigned to a clinician earlier because it did not have a Spanish-speaking clinician available. On February 25, 2022, father began participating in parenting groups. As for substance abuse services, father was actively participating in group sessions and engaged when called upon, but tested positive for alcohol in February 2022. Additionally, father was participating in supervised visitation with the children.

---

[2]     The six-month status review report clarified that November 23, 2021, was the date father completed the first half of intake. He completed the second half of intake on February 17, 2022.

The agency summarized that father had not completed his case plan goals; however, it acknowledged that he had been unable to begin services sooner due to the unavailability of a Spanish-speaking clinician at Sierra Vista. The agency concluded that the parents had received six months of reunification services and had not yet addressed or mitigated the issues that led to the children's removal. They had not demonstrated their ability to stay sober, or that they could safely and appropriately care for the children. The agency recommended both parents continue receiving reunification services. It further recommended the juvenile court find it had made reasonable efforts to return the children to their parents, and that father's progress had been poor.

On March 15, 2022, father appeared at the six-month review hearing with a Spanish interpreter. Father's counsel asked the juvenile court to make a lack of reasonable services finding on behalf of father. He argued the lack of a Spanish-speaking clinician had delayed father's progress in services. County counsel argued that services were reasonable under the circumstances, noting that father was now engaged in services. The court denied father's counsel's request, stating:

> "I do find in reviewing the report and the attachments that reasonable services were offered, and certainly the Agency sought to address any barriers, such as language barriers, as soon as possible, giving [father] every opportunity to engage in those services, which he is now certainly doing."

The court thus found that the agency complied with the case plan by making reasonable efforts to return the children. The court further found father had made poor progress toward alleviating the causes necessitating placement, ordered father to continue participating in reunification services, and set a 12-month review hearing.

On March 30, 2022, father filed a notice of appeal.

## DISCUSSION

### A. Appealability

As a preliminary matter, father argues that his challenge to the juvenile court's reasonable services finding is cognizable on appeal. Alternatively, father requests that this court exercise its discretion to treat his appeal as a petition for writ of mandate. Respondent does not object to this court reviewing this matter as either an appeal or a petition for writ of mandate. For reasons stated below, we find father's challenge to the juvenile court's reasonable services finding cognizable on appeal.

"A judgment in a proceeding under Section 300 may be appealed in the same manner as any final judgment, and any subsequent order may be appealed as an order after judgment." (§ 395, subd. (a)(1); *Dwayne P. v. Superior Court* (2002) 103 Cal.App.4th 247, 259 ["the court's dispositional and following orders are directly appealable, with the exception of an order scheduling a selection and implementation hearing under section 366.26"].) "Generally, a parent who is aggrieved by an order after judgment in a juvenile dependency proceeding may take an appeal from that order. (§ 395.) 'To be aggrieved, a party must have a legally cognizable immediate and substantial interest which is injuriously affected by the court's decision.' " (*In re Holly B.* (2009) 172 Cal.App.4th 1261, 1265.) "For purposes of appellate standing in dependency cases, a parent is aggrieved by a juvenile court order that injuriously affects the parent-child relationship." (*In re Paul W.* (2007) 151 Cal.App.4th 37, 62.)

In *In re T.G.* (2010) 188 Cal.App.4th 687 (*T.G.*), the court reasoned that "a parent or child can [be] aggrieved by a reasonable services finding at the time of the six-month review hearing if it is not supported by substantial evidence. Such a finding can put the interests of parents and children in reunification at a significant procedural disadvantage." (*Id.* at p. 695.) The court identified three procedural disadvantages.

"First, reunification services are generally limited to 12 months for a child over the age of three years." (*T.G.*, *supra*, 188 Cal.App.4th at p. 695.) "Second, a heightened

7.

showing is required at the time of the 12-month review in order to continue services to the statutory maximum of 18 months. … 'The court shall extend the time period only if it finds that there is a substantial probability that the child will be returned to the physical custody of his or her parent … within the extended time period or that reasonable services have not been provided to the parent.' " (*Ibid*.) To find there is a " 'substantial probability' " of return to the parents, "the court must find there was consistent and regular visitation by the parent and 'significant progress in resolving problems that led to the child's removal.' (§ 366.21, subd. (g)(1)(B).) In addition, the court must find the parent 'has demonstrated the capacity and ability both to complete the objectives of his or her treatment plan and to provide for the child's safety, protection, physical and emotional well-being, and special needs.' " (*Ibid*.) "[I]t would be significantly more difficult for a parent to either reunify with a child or to satisfy the heightened showing required for a continuation of reunification services if the parent was not provided with reasonable services during the first six months of the reunification period." (*Ibid*.) Third, "a parent whose services are terminated at the 12-month review period based in part on an erroneous finding of reasonable services during the first six months of reunification, would be unable to challenge that finding by way of an appeal from a subsequent adverse order at the time of the 12-month review hearing." (*Id*. at pp. 695–696.)

We find the reasoning in *T.G.* persuasive and will reach the merits of father's appeal.

## B. Reasonableness of Reunification Services

Father contends he was not provided with reasonable services during the six-month review period because the agency failed to address the language barrier at Sierra Vista. He argues that because Sierra Vista did not have a Spanish-speaking clinician, he was unable to participate in critical aspects of his case plan until late into the six-month review period.

8.

If a child is not returned to his or her parent at the six-month review hearing, the juvenile court "shall determine whether reasonable services that were designed to aid the parent … in overcoming the problems that led to the initial removal and continued custody of the child have been provided or offered to the parent." (§ 366.21, subd. (e)(8); § 366, subd. (a)(1)(B) [at each status review hearing the court shall determine "[t]he extent of the agency's compliance with the case plan in making reasonable efforts … to return the child to a safe home"].) " 'A finding that reasonable reunification services have been provided must be made upon clear and convincing evidence. [Citation.]' " (*Serena M. v. Superior Court* (2020) 52 Cal.App.5th 659, 674.)

"The ' "adequacy of reunification plans and the reasonableness of the [Agency's] efforts are judged according to the circumstances of each case." [Citation.] To support a finding reasonable services were offered or provided, "the record should show that the supervising agency identified the problems leading to the loss of custody, offered services designed to remedy those problems, maintained reasonable contact with the parents during the course of the service plan, and made reasonable efforts to assist the parents in areas where compliance proved difficult." ' " (*T.J. v. Superior Court* (2018) 21 Cal.App.5th 1229, 1240 (*T.J.*).) "The standard is not whether the services provided were the best that might be provided in an ideal world, but whether the services were reasonable under the circumstances." (*In re Misako R.* (1991) 2 Cal.App.4th 538, 547.) The remedy for failing to offer or provide reasonable services is to extend the reunification period and continue services. (*In re Alvin R.* (2003) 108 Cal.App.4th 962, 975 (*Alvin R.*).) We review the juvenile court's reasonable services finding for substantial evidence. (*Patricia W. v. Superior Court* (2016) 244 Cal.App.4th 397, 419–420.)

According to the record, the agency wasted no time in arranging services for father. On August 5, 2021, the agency provided father with service referrals at the detention hearing and gave him the information in Spanish. The agency sent the referrals

9.

to Sierra Vista on August 6, 2021,[3] and again on September 1, 2021. Father did not apply for services at Sierra Vista until November 9, 2021. After receiving his application, Sierra Vista promptly conducted the first half of intake on November 23, 2021. Thus, the delay from August 6 to November 9, 2021, was attributable to father's own actions.[4]

The following month, on December 14, 2021, the juvenile court conducted a 90-day review hearing as requested by father's counsel to ensure father was receiving Spanish-speaking services. At that time, it had only been approximately one month since father had submitted the application to Sierra Vista and intake was initiated. The agency filed documents with the court indicating it knew father had not been assigned a clinician at Sierra Vista for anger management, individual counseling, domestic violence, or parenting education. Thus, at that point, the agency was only aware of the one-month delay. There is no indication the agency knew the delay would go on to last until February 2022 as a result of an unavailable Spanish-speaking clinician.

The record shows the agency next became aware of the continued delay on February 10, 2022, when Sierra Vista contacted the agency and reported that father had not been assigned to a clinician earlier because it did not have a Spanish-speaking clinician available. However, a week later, on February 17, 2022, Sierra Vista completed father's second half of intake and he began parenting groups that same month. In its six-month review report, the agency acknowledged that the language barrier prevented father from beginning services at Sierra Vista sooner. Notably, father did not fault the agency for the delay. At the six-month review hearing, father's counsel stated, "[I]t is

---

**3** The agency reported it faxed father's referral to Sierra Vista on August 6, 2021, but a letter from Sierra Vista indicates the referral date was August 4, 2021.

**4** We acknowledge that although father was provided with referral information at the detention hearing, the six-month review period runs from the date of the disposition hearing. (§ 361.5, subd. (a)(1)(A).)

10.

certainly not [the social worker's] fault. I don't blame him one bit, and I know [father] is doing what he needs to do to reunify."

While delays in the provision of services have certainly been found to support a finding of no reasonable services, the cases cited by father—*T.J.*, *supra*, 21 Cal.App.5th 1229 and *Alvin R.*, *supra*, 108 Cal.App.4th 962—are distinguishable.

*T.J.* involved an intellectually disabled mother who experienced significant delays in accessing services. (*T.J.*, *supra*, 21 Cal.App.5th at pp. 1232–1233.) The appellate court summarized that, "the Agency put Mother in a holding pattern that resulted in a wait of nearly 11 months after her children were removed from her physical custody before she was provided with an individual therapist; it failed completely to provide her with help for anger management; it delayed almost eight months from physical removal in providing services from [the provider] and never delivered ongoing services; it failed to give her help with practical independent living skills; and it failed to provide her with housing assistance." (*Id.* at p. 1248.) The appellate court concluded the agency did not provide reasonable services. (*Ibid.*) Here, in contrast, the agency quickly secured services to address all of father's needs. The agency did not merely place his name on a waiting list and then allow nearly eight months to a year to pass before he had access to those services. "Clearly, the delay in [father's services at Sierra Vista] rendered the services provided imperfect, but rarely will services be perfect." (*Melinda K. v. Superior Court* (2004) 116 Cal.App.4th 1147, 1159.)

In *Alvin R.* the father challenged the juvenile court's finding that reasonable reunification services had been provided in advance of the six-month review hearing. (*Alvin R.*, *supra*, 108 Cal.App.4th at p. 965.) The juvenile court had assumed jurisdiction over the child upon a sustained finding that the father physically disciplined him. (*Id.* at p. 966.) The father was ordered to complete a parenting class and individual counseling, and the child was ordered to complete eight individual counseling sessions before they could commence conjoint counseling. (*Id.* at pp. 966–967.) The juvenile court

11.

conducted an interim review hearing prior to the six-month review hearing, where it learned the father had completed the parenting class and was engaged in individual counseling, but that the child had only attended one individual counseling session for reasons outside the father's control and refused to visit father. (*Id.* at pp. 967–968.) The juvenile court acknowledged that conjoint counseling was critical in preparing the child to agree to visitation. (*Ibid.*) As a result, the juvenile court eliminated the requirement that the child participate in eight individual counseling sessions before conjoint counseling could occur and suggested to the department that it include an explanation of its reasonable efforts with regard to the child's individual counseling sessions in its next report. (*Id.* at p. 968.) The department was well aware of the issues preventing the child from participating in individual counseling and did very little to address the issues. (*Id.* at p. 973.) Nonetheless, at the six-month review hearing, the juvenile court found the department had provided reasonable reunification efforts. (*Id.* at p. 970.)

The appellate court ruled that the department's failure to ensure the child attended individual counseling, and the apparent effect the lack of counseling had on the child's willingness to visit with father, conclusively undermined the juvenile court's reasonable services finding. (*Alvin R.*, *supra*, 108 Cal.App.4th at pp. 971–972.) The appellate court noted, "Father had done all that was required of him under the plan. Thus, *one* service, getting [the child] into eight sessions of individual therapy, stood in the way of all measures remaining under the reunification plan, and the [d]epartment submitted no evidence of having made a good faith effort to bring those sessions about." (*Id.* at p. 973.) Moreover, the department ignored the juvenile court's order eliminating the eight-session requirement in an effort to speed things along. (*Ibid.*) "[T]he [d]epartment's first interim review report, filed nearly five months after reunification efforts should have begun, … did not even address its efforts to get [the child] into counseling. (*Id.* at p. 972.) The appellate court, therefore, reversed the reasonable services finding. (*Id.* at p. 975.) Here, the agency addressed its reasonable efforts in its

various reports leading up to the six-month review hearing, which indicated that father's lack of progress in services at Sierra Vista were partially due to his own actions because he submitted his application three months after the initial referral was made. In *Alvin R.*, the delay was not attributable to the father in any sense and the department had ignored the juvenile court's attempts to speed things along. Additionally, in the present case, father had not done all that was required of him under his case plan. Father had tested positive for alcohol several times. His ability to stay sober was a critical component of his plan because the domestic violence between him and mother was exacerbated by his substance abuse. Thus, the services he was waiting to complete at Sierra Vista did not "[stand] in the way of all measures remaining under the reunification plan" as in *Alvin R.* (*Id.* at p. 973.) For these reasons we find *Alvin R.* inapposite.

As noted above, the remedy for providing services that are not reasonable is to continue them. Here, the juvenile court ordered the department to continue providing services to father to the 12-month review hearing. Therefore, even assuming the court erred in finding father was provided reasonable services, father was already granted an additional six months of services.

We conclude substantial evidence supports the juvenile court's reasonable services finding at the six-month review hearing.

## DISPOSITION

The juvenile court's order is affirmed.