Filed 7/16/24  In re M.R. CA3

NOT <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| In re M.R. et al., Persons Coming Under the Juvenile Court Law. | C099304 |
| YOLO COUNTY HEALTH AND HUMAN SERVICES AGENCY,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>D.R. et al.,<br><br>Defendants;<br><br>N.R. et al.,<br><br>Appellants. | (Super. Ct. Nos. JV20221201, JV20221202) |

Minors M.R. and N.R. (minors) appeal from the juvenile court's orders made at the six-month review hearing.  (Welf. & Inst. Code, §§ 366.21, subd. (e), 395.)[1]  Minors

---

[1]  Undesignated statutory references are to the Welfare and Institutions Code.

contend that the juvenile court abused its discretion in reducing visitation with their father and requiring that visitation with him be supervised. M.R.'s opening brief also challenges the juvenile court's decision to assign educational rights to his caregivers. Having reviewed the record, we find adequate support for the juvenile court's decision to restrict visitation with father. We need not address M.R.'s challenge regarding educational rights, because, as his reply brief argues, that claim is moot following the juvenile court's decision to restore those rights to his parents at the 12-month review.

BACKGROUND

On August 5, 2022, the Yolo County Health and Human Services Agency (Agency) filed a dependency petition under section 300, subdivisions (b)(1) and (c) with respect to minors N.R. and M.R. The petition alleged that minors' father D.R. (father) failed to provide adequate care, support, and supervision to minors in that he engaged in "persistent and pervasive" parental alienation of minors' mother, J.R. (mother). Father undermined mother's authority, encouraged minors to leave her home at great physical peril, and refused to coparent with her. N.R., who was then 13 years old, and M.R., who was then 16, engaged in dangerous and concerning behavior as a result. For example, while at mother's home, minors stabbed her couch and bed with a knife, cut electronic cords, and held a knife to her. They ran away from her home repeatedly, refused to go to school, ran down the freeway, and scratched themselves in bushes to make it appear that mother had abused them. An evaluator appointed by the family court in a contentious custody dispute between the parents concluded that minors had been "overwhelmingly damaged." The evaluator opined that father "pathologically alienated" minors and that minors' relationship with mother had been significantly impaired, "perhaps even irrevocably." The Agency alleged that mother was unable or unwilling to provide adequate care for her children in that minors' behavior was beyond her control.

When minors were interviewed by the Agency, they provided identical answers and spoke in a robotic tone. M.R., who has autism, looked to N.R. before answering.

2

Minors could not identify any friends, family members, or when they last attended school; they did not know what food or activities they liked. Minors responded to questions by staring blankly, tipping their head sideways, repeating the question, and saying, "I don't know," in a very robotic tone.

On August 25, 2022, the juvenile court ordered services for both parents and a minimum of one hour per week of supervised therapeutic visits with each of them. A video visit with father was terminated early when he discussed the case with minors in violation of visitation guidelines and engaged in other disruptive behavior.

At a hearing the following month, minors and father requested that the juvenile court lift the requirement that visits be therapeutic. The court denied the request, stating, "I'm not prepared to lift the therapeutic visits for the parents. The parents have caused all this issue as far as I'm concerned."

In October 2022, the Agency informed the juvenile court that there had been no therapeutic visits with mother because both minors were refusing to call or visit with her. The court directed the Agency to schedule at least one therapeutic visit between mother and minors.

The following week, the Agency filed a section 388 petition with respect to each minor, requesting that the juvenile court find father's visits were detrimental. The petitions alleged that minors were exhibiting concerning behavior due to father's alienation, father was inappropriate during a visit, father had failed to address unresolved mental health issues, and he did not appreciate the impact of his behavior on his sons.

At the hearing on the Agency's petitions, a social worker testified that both minors refused to go to school and N.R. refused to go to the doctor or dentist. She also reported concerns arising from two incidents in which minors refused to listen to directions (once when a visit ended and once when N.R. was being transported to his placement). Minors became nonresponsive and ignored staff requests for more than an hour. The social worker also testified that father made inappropriate comments during supervised

3

telephone calls with N.R. She confirmed that the Agency had tried to set up in-person therapeutic visits for minors but the therapist had concerns about father's behavior and did not want to jeopardize the therapeutic relationship.

After the hearing, the juvenile court found father's visits with minors to be detrimental. It suspended visits with father until both parents underwent psychological evaluations and minors had engaged in individual therapy.

The juvenile court held a jurisdiction/disposition hearing on November 3, 2022. The social worker testified that father had not demonstrated any insight into the reasons why minors were removed and had not changed his behaviors. He expressed no willingness to engage in services and refused to coparent with mother. The social worker was concerned that father had coached minors, as evidenced by their near-identical responses when interviewed.

The juvenile court ordered both minors removed from parental custody. It found that they were suffering psychologically and that it was not safe to return them to either parent's home. The court ordered reunification services for both parents.

At a December 2022 review hearing, the Agency reported that M.R. was refusing to go to school or the doctor without father present. The social worker stated, "I'm hoping father can support the children attending school." Father's counsel responded, "No comment, Your Honor."

In February and March 2023, minors filed section 388 petitions asking the juvenile court to lift the detriment finding as to visitation with father, allow supervised visits of six hours per week, and provide the Agency with authority to change visitation to include unsupervised and overnight visits. The petitions alleged that father had attended medical appointments with N.R. without incident and that father was participating in services.

A visiting judge presided over the hearing on minors' petitions. The Agency did not object to minors' request but asked the juvenile court to allow only three hours of supervised visitation. The visiting judge lifted the detriment finding, ordered three hours

of supervised visits for father per week, and granted the Agency authority to make whatever appropriate visitation was in minors' best interests.

At a May 2023 meet and confer, over mother's objection, the parties agreed to increase visitation with father to six hours per week.

The regularly assigned judge held the six-month review hearing on August 7, 2023. A social worker testified that father had completed counseling services and a parenting course, but still did not want to participate in a coparenting class. He also failed to show insight into his part in the parental alienation leading to the Agency's intervention. The Agency continued to believe that minors could not safely be returned to his care.

The social worker testified that mother was participating regularly in counseling and had completed parenting and coparenting classes. Mother reportedly had a strong understanding of the class curriculum, but struggled to use the skills she had learned in therapy, had not expressed accountability for her part in the circumstances leading to the children's removal, and continued to bring up her own trauma and talk about the past.

With respect to visitation, the juvenile court heard testimony that minors continued to refuse contact with mother, notwithstanding repeated encouragement from therapists and social workers. Father was participating in unsupervised visits, including a few overnight. The social worker testified that visits with father had been going well and that the Agency's decision to allow unsupervised and overnight visitation reflected a "natural progression."

The social worker also testified that minors' case plan required them to attend school in person, but N.R. attended online and M.R. did not attend at all. M.R. was unwilling to go to school, and his individual education plan, which recommended that he attend in person, was not signed by parents despite the Agency's efforts to have them do so. When asked by the juvenile court why the Agency had allowed the children to refuse to attend school, the social worker stated that the Agency "can't physically force [minors]

5

to do anything." With respect to M.R., the Agency "would have physically had to remove him, and foster care w[as] not able to do that."

The juvenile court issued its ruling on August 21, 2023. As relevant here, the court declined to return either minor to his parents after finding that return posed a substantial risk of detriment. It ordered continued reunification services for both parents.

The juvenile court also imposed new limits on father's visitation. It capped visitation at three hours of supervised visitation per week, admonishing the Agency: "You must not let [father] have unsupervised visits with [minors] until their behavior changes. [Father] is still controlling these children, and if it doesn't stop, the Agency is not addressing the problem that got us here in the first place." The court observed that minors still refused to see their mother or attend medical or dental appointments without father and M.R. continued to refuse to go to school. With respect to N.R., the court "believe[d] that he continues to refuse to visit his mother in order to please his father, and he's not going to tell us that." The court stated: "What [father] has done to these boys is terrifying. Just watching the interaction between them in court is unsettling."

The juvenile court additionally found that M.R.'s educational needs were not being met, and it awarded educational rights for M.R. to his caregivers. The court stated: "[M.R.] also needs to attend school. I would suggest that while you can't physically drag him there, you can remove every privilege that he gets until he goes to school. The Agency needs to be creative and not just acquiesce to [M.R.] He's not in charge, the adults are. [¶] I think you also need to stop considering online school and get both [minors] in in-person learning . . . ."

Minors filed timely appeals from the juvenile court's August 21, 2023 orders.

## DISCUSSION

### I

Both minors contend that the juvenile court abused its discretion in restricting their visitation with father to three hours of supervised visits per week.

6

It is well established that "[v]isitation is an essential component of any reunification plan." (*In re Alvin R.* (2003) 108 Cal.App.4th 962, 972.) Visitation generally must "be as frequent as possible, consistent with the well-being of the child." (§ 362.1, subd. (a)(1)(A).) " 'While visitation is a key element of reunification, the court must focus on the best interests of the children "and on the elimination of conditions which led to the juvenile court's finding that the child has suffered, or is at risk of suffering, harm . . . ." ' " (*Serena M. v. Superior Court* (2020) 52 Cal.App.5th 659, 673.) "[I]f visitation is not consistent with the well-being of the child, the juvenile court has the discretion to deny such contact." (*In re T.M.* (2016) 4 Cal.App.5th 1214, 1219.) The well-being of the child includes both physical and emotional health. (*Ibid.*) The juvenile court may "revisit the appropriateness of visitation in light of new circumstances, including progress in individual counseling." (*Id.* at p. 1220.)

We review visitation orders for abuse of discretion. (*In re Brittany C.* (2011) 191 Cal.App.4th 1343, 1356.) We do not reweigh the evidence, and when two or more inferences can reasonably be drawn from the facts, we will not substitute our judgment for that of the juvenile court. (*In re J.P.* (2019) 37 Cal.App.5th 1111, 1123; *In re Emmanuel R.* (2001) 94 Cal.App.4th 452, 465.)

Having reviewed the record in this case, we are unable to conclude that the restrictions on visitation imposed by the juvenile court were an abuse of discretion. It is true that the Agency expressed no safety concerns with minors' increased and unsupervised visitation with father and that the social worker believed the visits had gone well. But the record contains sufficient support for the juvenile court's conclusion that continuation of that level of visitation was not in minors' best interest because it risked perpetuating the conditions leading to minors' removal. (*Serena M. v. Superior Court*, *supra*, 52 Cal.App.5th at p. 673.)

As explained above, minors in this case were initially removed from their parents' custody as a result of father's persistent parental alienation of mother, which had caused

minors to suffer serious emotional damage. The father's alienating behavior had led minors to engage in harmful and dangerous activities, such as stabbing mother's furniture with a knife and running on a freeway to reach father's house. At the six-month review, the social worker testified that father had demonstrated no insight into his role in creating the conditions leading to this behavior. He continued to refuse to attend coparenting classes. And minors continued to refuse visitation with mother—a state of affairs that the juvenile court, after having presided over this dependency proceeding for more than 12 months, attributed to father's ongoing negative influence and control over his sons. In light of this record, we cannot conclude that the juvenile court abused its discretion in restricting visitation with father in an effort to promote reunification with both parents and to address the conditions leading to minors' removal.

We are not persuaded by minors' contention that the visitation order was aimed at punishing minors instead of serving their best interests. In support of this argument, minors point to two statements made by the juvenile court. In the first, the court responded to comments from N.R.'s lawyer that N.R. wanted his mother to apologize to him before he could reestablish a relationship with her. The court said: "[w]hat's mom supposed to apologize for, being unable to handle bad behavior? I've never heard N.R. apologize, or even show any remorse for his bad behavior." In context, this statement does not support a conclusion that the juvenile court reduced visitation with father as a means to punish N.R. for not apologizing to his mother. Rather, the statement was made as part of the court's explanation for its concern that the causes of minors' alienation from mother had not been addressed.

In the second statement, the juvenile court said that M.R. "needs to attend school," adding that, while the Agency could not physically drag him to school, it could remove his privileges until he attends. The record demonstrates that the court was not referring to visitation; the court did not suggest that M.R.'s visitation with father was a privilege that could or should be removed as a penalty for failing to attend school.

8

For these reasons, this case is different from *In re N.M.* (2023) 88 Cal.App.5th 1090, on which minors rely. In that case, the juvenile court awarded sole physical custody to mother to avoid rewarding father's failure to complete his case plan. (*Id.* at p. 1095.) The Court of Appeal deemed the order an abuse of discretion because a custody order "must serve the best interests of the children, not reward or punish one parent or another for failing to comply with the case plan." (*Ibid.*) Here, the challenged visitation order reflects the juvenile court's effort to address the cause of minors' removal and to foster minors' reunification with both parents.

We also reject minors' analogy to *In re David D.* (1994) 28 Cal.App.4th 941. There, the juvenile court suspended the mother's visitation and thereafter terminated parental rights without considering how an abrupt end to visits would affect the minors and without finding that visitation would be detrimental to them. (*Id.* at pp. 953-954.) In this case, the juvenile court maintained visitation between father and his sons, only reverting to more limited and supervised visits after concluding that expanded and unsupervised visitation was impeding resolution of the issues underlying the Agency's intervention in this case.

Minors also invoke the constitutional protection for family integrity. Minors did not object to the August 2023 visitation order on constitutional grounds in the juvenile court. Any claim grounded in the Constitution is therefore forfeited on appeal. (*Kevin R. v. Superior Court* (2010) 191 Cal.App.4th 676, 686.) In any event, while minors are correct that the Constitution protects the parent-child relationship (*In re Marilyn H.* (1993) 5 Cal.4th 295, 306), they do not dispute that a juvenile court may, consistent with the Constitution, restrict a parent's visitation when the court acts within its lawful discretion based on the record before it. For the reasons explained above, the juvenile court's visitation order satisfied that standard.

II

M.R.'s opening brief challenges the juvenile court's decision to transfer educational rights from his parents to his caregivers.  His reply brief, filed after the 12-month review hearing, argues that the issue is no longer justiciable because the juvenile court restored educational rights to his parents after that hearing.

We agree that the challenge is moot.  In light of the juvenile court's order at the 12-month review, there is no effective relief that we could grant M.R. beyond what the juvenile court has already provided.  (*In re N.S.* (2016) 245 Cal.App.4th 53, 60-62; *In re Pablo D.* (1998) 67 Cal.App.4th 759, 761.)[2]

DISPOSITION

The juvenile court's orders are affirmed.

 /s/
Feinberg, J.


We concur:


 /s/
Mauro, Acting P. J.


 /s/
Mesiwala, J.

---

[2]  We grant minors' request for judicial notice of the juvenile court's December 28, 2023, order only insofar as it relates to the court's restoration of parents' educational rights over M.R.  To the extent that minors refer to or rely on the December 28, 2023, order to support their challenge to the juvenile court's visitation order, the request is denied.  The facts and circumstances in existence at the time of that hearing were not before the juvenile court at the six-month review and are therefore irrelevant to our disposition of minors' current claim regarding visitation with father.