Filed 3/28/25  In re M.M. CA4/2

*See dissenting opinion.*

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| In re M.M. et al, Persons Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>C.M.,<br><br>    Defendant and Appellant. | E083666<br><br>(Super.Ct.Nos. J295412 & J295413)<br><br>OPINION |

APPEAL from the Superior Court of San Bernardino County.  Steven A. Mapes, Judge.  Affirmed in part; reversed in part with directions.

Mansi Thakkar, under appointment by the Court of Appeal, for Defendant and Appellant.

Tom Bunton, County Counsel, David Guardado, Deputy County Counsel for Plaintiff and Respondent.

In December 2022 plaintiff and respondent San Bernardino County Children and Family Services (the Department) detained the two children of defendant and respondent C.M. (Mother). In April 2024, at the 12-month review hearing, the juvenile court found that the Department had provided Mother with reasonable services. Mother contends substantial evidence does not support the finding that she was provided with reasonable services. We affirm in part and reverse in part with directions.

**FACTS**

A.    BACKGROUND

Mother and M.S.M. (Father)[1] share two children: N.M., a boy who was six years old in December 2022, and M.M., a girl who was four years old in December 2022. Mother and Father divorced in July 2022; however, Mother, Father, and the two children continued to live together. Their house is a second home owned by Father's parents. Father suffers from untreated bipolar disorder with psychotic delusions. On various occasions, Father has hit Mother in the presence of the children and locked Mother in rooms. Mother did not move out of the house "due to lack of finances." Father refused to move out of the house because his parents owned the house.

_____

[1] Father is not a party to the appeal.

2

B.    DETENTION

On December 15, 2022, Father arrived home and began arguing with Mother in front of M.M.  Father summoned Mother into a bathroom and threatened to rape her.  In response, Mother slapped Father in an attempt to move him away from her.  Police arrested Mother.  The Department detained the children.

C.    JURISDICTION

On February 14, 2023, the juvenile court found true the allegations that: (1) Mother engages in domestic violence with Father while in the children's presence; (2) Mother failed to protect the children from Father's untreated mental illness; (3) Father engages in domestic violence with Mother while in the children's presence; and (4) Father's untreated mental illness places the children at risk of abuse or neglect. (Welf. & Inst. Code, § 300, subd. (b)(1).)  Mother's reunification services included individual therapy, domestic violence classes, and parenting classes.

D.    SIX-MONTH REVIEW

By August 2023 Mother had completed her individual therapy.  Father's mother (Grandmother) told Mother that Mother would have to move out of the house unless Mother agreed to be in a relationship with Father.  Grandmother wanted Mother and Father "to get together again and live like a family with their children."  Mother still lived in Grandmother's house because she could not afford rent elsewhere due to working a low-wage job with inconsistent shifts.  Father sometimes slept at motels or in his truck.  In August 2023, the Department social worker opined that the children could

not be returned to Mother due to Mother not having completed her classes and not having stable housing.

E.  12-MONTH REVIEW

Mother completed her parenting and domestic violence classes in January 2024. Mother and Father continued to live together in Father's parents' second house. Grandmother continued "putting a lot of pressure on . . . [M]other to reunite with [F]ather." Mother felt her housing might be taken from her if she did not comply with Grandmother's demand. Father wanted to stay in the house and coparent with Mother. "[M]other stated that . . . [F]ather still has anger management issues and she wants him to leave the home, if the children are returned to her." "[F]ather stated that he is willing to move out of the home, if the children are returned to [M]other."

The Department recommended that the children be placed with Mother on a 29-day extended visit, with Father residing elsewhere—exactly where was unclear. Father sometimes slept in his car or at a motel. On February 6, 2024, the juvenile court authorized Mother's 29-day visit with the children.

On February 27, 2024, a Department social worker conducted an unannounced visit at Mother's house, and Father answered the door. Mother and the children were not there. Mother was unaware that Father was at the house. Mother told the social worker that she wanted to move out of the house because "[F]ather is always wanting to come into the home. [M]other called law enforcement two (2) weeks ago, when [F]ather attempted to come into the house against [M]other's wishes."

4

On March 11, 2024, Mother applied ex parte for a restraining order protecting her from Father.  In the application, Mother asserted that (1) on November 28, 2023, Father punched a wall and damaged Mother's television; (2) in January 2024, "Father vandalized the home by tossing trash and throwing furniture on the floor"; and (3) on February 28, 2024, Father sent Mother a text reading, " 'I'm going to kill u if I can't have u no one can u will see.' "  The juvenile court granted a temporary restraining order protecting Mother from Father.  Also on March 11, 2024, the juvenile court terminated Mother's extended visit with the children.

On April 4, 2024, at the 12-month review hearing, the Department social worker testified that she had not been aware of Father's November 2023 domestic violence "until recently."  The Department social worker testified that Mother had been "work[ing] with the housing navigator closely," obtained "a new job, full-time job," and had "gotten an apartment" but still needed to sign the lease.

After a recess in the midst of the social worker's testimony, the following discussion occurred:

The Court:  "I did give a tentative [off-the-record] to. . . all counsel . . . and you have an update.

"[The Department's Attorney]:  I discussed the issue with the Department.  We will submit on the Court's tentative as discussed [off-the-record] in chambers.  I believe it was for the Court to . . .[f]ind reasonable services to the parents, and move to the .22 date.

5

"The Court: Okay. And, yeah, we talked for quite a while [off-the-record] in chambers, and that was my tentative based on the evidence. . . . [¶] Services don't have to be perfect, but they have to be reasonable. [Mother] was getting the benefit by moving the case to where it got, and she failed in her efforts, and so I think that saves the Department."

The juvenile court asked if it could excuse the Department social worker as a witness "and proceed with [its] indicated [ruling]?" Mother's attorney replied, "That's fine. I'll proceed with argument." Mother's attorney argued that the Department failed to provide Mother with reasonable services in that Mother "completed the case plan in November 2023, [but] domestic violence was still an issue."

The juvenile court said, "I think in part why I'm ruling against your request, [Mother's attorney], the Department slowly recogniz[ed] Mother needs assistance to get out of the control of Father and his family. So they have been doing that. They did that. Mom has a new lease somewhere. It's going to take place in a couple weeks, so I would do counseling, DV/victim, and specific[ally] to address these control issues."

The juvenile court continued, "So the Court's going to find for [Mother] and [Father], [Mother] had her opportunities. She blew it, and [Father] also had opportunities. The services may not have been perfect. . . . Looking at where we were with the case, you know, not perfect, but reasonable services for the parents by clear and convincing evidence. I'll find that."

**DISCUSSION**

Mother contends substantial evidence does not support the finding that the Department provided her with reasonable services.

"[W]hen family reunification services have been ordered, the court is required expressly to make a finding at each subsequent hearing as to whether reasonable services have been provided during each review period." (*Melinda K. v. Superior Court* (2004) 116 Cal.App.4th 1147, 1153.) The Department " 'must make a good faith effort to develop and implement a family reunification plan. [Citation.] "[T]he record should show that the supervising agency identified the problems leading to the loss of custody, offered services designed to remedy those problems, maintained reasonable contact with the parents during the course of the service plan, and made reasonable efforts to assist the parents in areas where compliance proved difficult." ' " (*In re T.G.* (2010) 188 Cal.App.4th 687, 697.) We apply the substantial evidence standard of review. (*Ibid.*)

At the jurisdiction hearing, the juvenile court found Mother and Father engaged in domestic violence. Thus, domestic violence is the problem that led to the loss of custody. We examine whether the Department offered services designed to remedy that problem. Mother did not want to be in a relationship with Father but could not escape Father and the pressure to be in a relationship with him due to her inability to afford a separate residence. Therefore, the primary obstacle facing Mother in this case was a lack of affordable housing.

During the 12-month review period, the children were placed in Mother's care, which meant the children had to reside with Mother in the house that Mother repeatedly

7

said she needed to leave. No provisions were made for where Father would live during the children's extended visit. This was a recipe for disaster. Any reasonable person looking at the history of this case could predict that threats or domestic violence would ensue due to the instability caused by Father wanting to live at the house but being prohibited from doing so. Placing Mother, who is a domestic violence victim, in the position of having to keep Father—her abuser—out of the house that is owned by his parents was untenable and could only have furthered the domestic violence—not resolved it. Thus, the services offered were not designed to resolve the problem of domestic violence.

At the 12-month review hearing, the Department social worker testified that Mother "has gotten an apartment. She has not signed the lease, but she has been updated on that. She has worked with the housing navigator closely." There is no evidence as to (1) whether the housing navigator is associated with the Department; (2) if the Department provided Mother with contact information for the housing navigator, or if Mother found that service on her own; (3) when Mother began working with the housing navigator; and (4) when Mother was due to sign the lease for the apartment.

Nevertheless, the juvenile court found that the Department "slowly recogniz[ed] Mother needs assistance to get out of the control of Father and his family. So they have been doing that. They did that. Mom has a new lease somewhere. It's going to take place in a couple weeks." We see no evidence supporting the juvenile court's comments that the lease would be signed "in a couple weeks," perhaps that representation was made to the juvenile court off-the-record. If we give the Department

the benefit of the doubt by assuming everything in the juvenile court's comment to be true—the Department realized Mother needed housing assistance and provided housing assistance late in the case—there is no evidence as to why the housing assistance occurred so late in the case.

The Department's delay in providing Mother with housing assistance was inexplicable when housing was the primary obstacle to Mother being able to safely reside with her children. No one provided evidence as to why housing assistance was not a priority or could not happen earlier in the case. One cannot conclude based on this record that the services were reasonable because there is no evidence for why the Department delayed so long when housing was the one service Mother urgently needed in order to regain custody of her children. (See *In re Alvin R.* (2003) 108 Cal.App.4th 962, 973 (*Alvin R.*) [delay in providing services can cause services to be unreasonable].) Accordingly, we conclude substantial evidence does not support the reasonable services finding.

The Department contends the services it offered were reasonable because Mother did not inform the Department that Father's domestic violence was an ongoing issue. We reject the Department's claim of ignorance. In the Department's February 2024 report, in which it recommended the children be placed with Mother on a 29-day extended visit, the Department social worker wrote: "The undersigned had a conversation with both parents. This interaction became confrontational between both parents. The mother told the father that he still needs to work on his anger issues and that he would need to leave the home. The father denied having anger issues . . . . The

9

mother refused to continue the conversation and went to her room." The social worker personally witnessed Mother and Father becoming confrontational on the issue of housing. Instead of helping Mother to find alternate housing, the Department placed Mother in a situation in which Mother was responsible for keeping Father out of the house, which, over a 29-day period, was sure to involve threats or violence at some point. The Department had the information it needed to realize that Mother needed housing assistance.

The Department asserts that, when the social worker made an unannounced visit to the house, she saw no evidence of Father residing in the house, for example, she did not see Father's clothing in a bedroom. The evidence that Father was continuing to visit the house was that Father answered the door when the social worker knocked. Accordingly, we reject the Department's assertion that it was ignorant of Father's presence in the house.

The Department asserts that it "provided Mother with opportunities for reunification, but she simply failed in her efforts." The Department provided Mother with classes and counseling but what Mother needed was housing assistance. Mother repeatedly told the Department that she could not afford alternate housing, that Grandmother was using housing to pressure Mother into a relationship with Father, and that Father had anger issues. For example, in October 2023 the Department social worker wrote in a report to the juvenile court: "The mother stated that [Grandmother] is wanting [F]ather to return to live with [Mother]. The mother feels that the paternal grandparents are forcing her to reunite with the father. . . . The father calls the mother

approximately four (4) times a week. She stated that about three out of the four times, the father tends to lose his temper. He yells at her, easily gets irritated by anything, and she is unable to hold a conversation with him." The Department's delay in assisting Mother with housing was unreasonable when housing was the primary obstacle to Mother being able to safely care for the children.

The Department contends Mother's contention is moot because Mother was provided further reunification services at the 12-month review hearing and, after Mother's appeal was filed, the juvenile court returned the children to Mother's custody on a plan of family maintenance.[2] When a parent has been denied reasonable services, the juvenile court may order an extra six months of services, if doing so is in the children's best interests. (*Michael G. v. Superior Court* (2023) 14 Cal.5th 609, 632-635; see also *Alvin R.*, *supra*, 108 Cal.App.4th at pp. 973-974 [when reasonable services have not been provided, "the remedy is to extend the reunification period, and order continued services"]; *Robin V. v. Superior Court* (1995) 33 Cal.App.4th 1158, 1167 ["[T]he SSA provided inadequate services at least from June 1994, a time roughly coinciding with the six-month review hearing. Therefore, when the remittitur issues, the case will resume its six-month status" (fn. omitted.)]; *Carolyn R. v. Superior Court* (1995) 41 Cal.App.4th 159, 167 ["A court may extend the 18-month maximum for reunification efforts only under very limited circumstances, that is, when: . . . the court

---

[2] On October 28, 2024, we granted the Department's October 24, 2024, request for judicial notice.

finds reasonable services were not offered"].)  Because this case is ongoing, and Mother could be granted an additional six months of services, the issue is not moot.

In the future, if problems should arise while Mother's parenting continues to be supervised by the Department, then the record must accurately reflect the lack of reasonable services so that Mother can pursue an additional six months of services if needed.  (See *Michael G. v. Superior Court*, *supra*, 14 Cal.5th at pp. 634-635.)  We reverse the juvenile court's finding that reasonable services were provided.

## DISPOSITION

The juvenile court's order of March 11, 2024, is reversed only as to the finding that the Department provided reasonable services to Mother.  The juvenile court is directed to vacate its finding that reasonable services were provided to Mother and enter a new finding that the services provided to Mother were unreasonable.  In all other respects the March 11, 2024, order is affirmed.  (See *Alvin R.*, *supra*, 108 Cal.App.4th at p. 975 [similar disposition].)

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER _____
J.

I concur:

RAMIREZ _____
P. J.

12

[*In re M.M.*, E083666]

MENETREZ, J., Dissenting.

At the six-month review hearing under subdivision (e) of Welfare and Institutions Code section 366.21, the juvenile court continued reunification services for appellant C.M. (Mother) and found that reasonable services had been provided to her. (Unlabeled statutory references are to the Welfare and Institutions Code.) Mother did not appeal.

At the 12-month review hearing under subdivision (f) of section 366.21, the juvenile court continued reunification services for Mother and found that reasonable services had been provided to her. Mother appeals, arguing that the reasonable services finding is not supported by substantial evidence.

Any such error was harmless. If at the 12-month review hearing the juvenile court had found that reasonable services had not been provided, Mother would be no better off. Rather, her reunification services would have been continued and an 18-month review hearing would have been set. That is what actually happened in this case, so Mother was not harmed by the putatively erroneous finding.

Mother's argument to the contrary is based on *In re Alvin R.* (2003) 108 Cal.App.4th 962, but that case is distinguishable because it involved an appeal from the findings and orders at the six-month review hearing. (*Id.* at pp. 967-970.) Parental rights cannot be terminated if the juvenile court has never found that reasonable services were provided. (§ 366.26, subd. (c)(2)(A).) An erroneous reasonable services finding at the six-month review hearing (which is the first family reunification review hearing) is therefore prejudicial even if the parent's reunification services are continued at that

1

hearing—the finding would satisfy the requirements of subdivision (c)(2)(A) of section 366.26, thereby opening the door to termination of parental rights, even if the court at every subsequent hearing finds that reasonable services have not been provided. Thus, the erroneous reasonable services finding in *In re Alvin R.* was straightforwardly prejudicial.

The present case is distinguishable because this is an appeal from the findings and orders at the 12-month review hearing, and Mother did not appeal from the findings and orders at the six-month review hearing. The juvenile court's reasonable services finding at the six-month review is therefore final and satisfies the requirements of subdivision (c)(2)(A) of section 366.26, regardless of whether reasonable services are found at any subsequent hearing.

In sum, neither Mother nor the majority opinion identifies any way in which the putatively erroneous reasonable services finding was prejudicial. We should therefore affirm, and accordingly I respectfully dissent.

MENETREZ    
J.

2